RAWLS, Judge
(dissenting).
In my opinion the trial judge erred in failing to grant appellant’s motion for new trial in that the record reveals without material contradiction that the jury’s verdict was: 1. contrary to the law; 2. contrary to the evidence; 3. not in accord with the manifest weight of the evidence; and 4. based upon speculation or conjecture.
This controversy arose out of an automobile accident between motor vehicles driven by plaintiff and defendant between 10:30 and 11:00 p. m. on June 2, 1965, a clear dry night. The uncontradicted evidence shows that plaintiff was traveling south around a sweeping curve to the right on State Road 200 (A1A). Defendant, age 69, was traveling west on a paved county road which crossed a railroad track and terminated at the eastern edge of State Road 200. Across the intersection was a service station. The accident occurred in the southbound lane of traffic on State Road 200 — which was the lane in which *506 plaintiff was traveling. Plaintiff left 69 feet of skid marks prior to the point of impact. The car driven by the plaintiff was damaged on the left front, and defendant’s car was damaged on the left rear door.
The defendant testified: “I crossed the railroad track and stopped and I looked and I couldn’t see nothing, and I started on across, * * * Well, I got just across and there I looked and there the car was and when I seen it, I stomped down on my accelerator and tried to get out of the way, and I supposed the engine stopped. I was so excited then, I am sure it did stop, because I didn’t get across and he hit me.” He estimated plaintiff’s speed at 50 m. p. h. (speed limit — 45 m. p. h.), and testified that the lights from the service station in front of him were “everywhere” “shining in his eyes.” He further testified that there was a “lot of growth and weeds” to his left, but he did not say that it was tall enough to block his vision. He did state that plaintiff was 150 feet away from him when he first saw him.
The plaintiff’s testimony is substantially identical to that of the defendant. The plaintiff testified: “Well, that night about 11:00 o’clock, I finished my day’s work here and I was headed home, and I got out here on a sweeping curve, around Five Points, I saw this car come out from the side street, pull up to the highway and stop. I was back, I suppose about a hundred and fifty or maybe two hundred feet back and I glanced down at my speedometer I was running along about 45 miles an hour, and just as I got up to this intersection, he pulled across the highway and I slid my brakes, and I applied my brakes, and I hit him — I remember seeing the hood of my car fly up and — Q. * * * When you approached and first saw the car, did you slow down? A. No, sir. I thought — when I first seen him, about 300 or 400 feet back up the road there, I thought he might would come across, then, but he showed every indication that he was stopping and yielding the right of way to me, I maintained my same speed, and when I got right on him, he pulled across the highway ahead of me.”
The most damaging evidence to the plaintiff was his own testimony, to wit:
“Q * * * where were you when you first saw Mr. Davies’ car?
“A I would say approximately 350 to 400 feet.
“Q Where was his’car then?
“A It seems to me that he pulled to the highway and stopped and I glanced down at my speedometer and I was doing about 45 miles an hour.
“Q What did you glance' at your speedometer for, sir?
“A Well, I rióticed this car pulling up there and I don’t know, it was just instinct of driving, I suppose.
“Q Did you have some suspicion, I believe, that the car might pull on out into the highway?
“A Yes, sir, I had that suspicion.
“Q What did you do, sir ?
“A Well, it seems to me that he had to come to a complete stop and I resumed my speed.
jfc ‡ ‡ Jfc
“Q As you come down, I understand you were doing 45. Did you reduce your speed at some point?
“A No, sir, I didn’t.
“Q Did you have your lights on, sir?
“A Yes, sir.”
Thus, viewing the testimony, as we must, in the most favorable light in support of the jury’s verdict and judgment, the evidence is uncontradicted that plaintiff was driving along a paved highway at night, keeping a careful lookout, and was confronted with the sudden emergency occasioned by a vehicle driven from a side road into his path; whereupon he laid down 69 feet of *507 skid marks in an effort to avoid the collision. The offending driver’s only explanation for his actions was: “I crossed the railroad track and stopped and I looked and I couldn’t see nothing, and I started on across * * * and there I looked and there the car was”. In my opinion, the factual situation presented by this record clearly reflects a verdict and judgment contrary to the manifest weight of the evidence, and the trial judge erred in failing to grant a new trial.